A93A1008. HESTERLEE v. THE STATE.
(436 SE2d 32)

BLACKBURN, Judge.

In a fifteen-count indictment, the appellant, Neal Franklin Hesterlee, was charged with six counts of aggravated assault, four counts of armed robbery, two counts of sexual battery, and one count each of burglary, impersonating a police officer, and possession of a firearm by a convicted felon. Three co-defendants were also charged with aggravated assault, armed robbery, burglary, and impersonating an officer. Two of the three co-defendants pled guilty to several of the offenses charged prior to trial. Following a separate trial by jury, Hesterlee was found guilty on all counts and received a total sentence of life in prison plus 35 years. This appeal follows the trial court's denial of his motion for a new trial.

The evidence produced at trial viewed in the light most favorable to the jury's verdict shows that Hesterlee and a co-defendant appeared at the front door of a Lake City home under the guise of being police officers at approximately 5:00 p.m. on the afternoon of March 20, 1992. A mother, son, daughter, the daughter's boyfriend, and a male friend of the son, were in the home when Hesterlee and a co-defendant announced their presence, wielding guns and badges. The men forced their way into the home, shouted that they were police

officers, and placed a gun to the son's head. After the son and his friend fell to the floor in the living room as demanded by the intruders, the men forcefully led the son and his friend into a bedroom with the other victims, and demanded that they provide them with money, drugs, cash, and jewelry, threatening bodily injury if the demands were not met. Another co-defendant subsequently entered the home wielding a gun and joined the two men while the fourth co-defendant remained outside in an automobile parked in the driveway of the home. While the victims were face down on the floor of the bedroom as demanded by the men, the men ransacked the home in search of the desired items. They also tied the son's hands behind his back with plastic handcuffs often used by law enforcement officials.

Thereafter, Hesterlee, identified by the victims as the leader of the group, removed the daughter's boyfriend from the bedroom and made specific requests of him for money and drugs. Hesterlee struck the young man in the face twice when the young man could not provide him with any information on the requested items. Hesterlee subsequently removed the daughter from the room, "roughed her up" when she was unable to provide him with information on the items requested, and returned her to the bedroom with the rest of the victims. After viewing abusive behavior exhibited by the "officers," the mother repeatedly requested to see a form of identification. In response to the mother's request, Hesterlee grabbed the mother's hair and informed her that he was not a cop, but was a psycho, her worst nightmare and threatened to kill her. He subsequently put his hand inside of the mother's panties and placed a finger inside her rectum.

Hesterlee next removed the daughter from the room again and forcibly led her into another bedroom. Once inside the other bedroom, he removed her clothing from the waist down, touched her vagina, and made obscene comments to her until a co-defendant entered the room and informed him that they needed to leave because of the unexpected arrival of one of the son's friends. As the friend attempted to enter the home, one of the co-defendants in the automobile parked in the driveway of the home sounded the horn, warning the others of his entry. The friend was greeted at the door by a co-defendant displaying a gun. When he entered the home, this victim was hit, kicked in the face, and pulled across the floor by Hesterlee and a co-defendant.

Hesterlee and his co-defendants took various items from the victims and the home, including money and jewelry. Upon his departure from the home while wielding a gun, he was seen and identified by a passerby. Based upon information received from Hesterlee's son and a co-defendant, Hesterlee and the other co-defendants were found at a local motel in possession of guns, false police badges, and property belonging to the victims. The police also recovered plastic flex cuffs.

Shortly after their arrest, two of the co-defendants provided the police with written statements implicating Hesterlee as a participant in the robbery. However, at trial, after the men pled guilty to several of the offenses, those co-defendants recanted their previous statements and joined Hesterlee in denying his participation in the venture.

1. Hesterlee contends that a directed verdict of acquittal was warranted on the offenses charged as the evidence produced at trial was insufficient to support the jury's verdict. We disagree.

In a criminal case, a directed verdict of acquittal is warranted only where there is no conflict in the evidence and the evidence introduced at trial with all reasonable deductions and inferences therefrom demands a verdict of not guilty, the only legal finding possible. *Crumbley v. State*, 207 Ga. App. 33 (427 SE2d 27) (1993). "The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction." (Citation and punctuation omitted.) Id. at 34.

In the case sub judice, the evidence produced at trial shows that Hesterlee assailed all of the victims in addition to touching the intimate parts of the mother and daughter during the robbery venture while holding them at gunpoint. Although Hesterlee and two co-defendants testified that Hesterlee did not participate in the criminal venture, this court, as an appellate body, "does not weigh the evidence or determine witness credibility. [Cit.]" *Williams v. State*, 208 Ga. App. 12, 14 (430 SE2d 157) (1993). "Determinations of witness credibility, weighing the evidence, and resolutions of conflicts presented by the evidence are within the province of the jury. [Cit.]" *Madaris v. State*, 207 Ga. App. 145, 147 (2) (427 SE2d 110) (1993). Viewing the evidence in the light most favorable to the jury's verdict, there is ample evidence from which a rational trier of fact could determine the guilt of Hesterlee beyond a reasonable doubt of the offenses charged.

Hesterlee further argues that a directed verdict was warranted because the indictment alleged the use of a model 381 pistol and the evidence produced at trial showed that the weapon used was a model 38C. However, this error in the model of the gun used is not sufficient to constitute a fatal variance which would warrant a directed verdict of acquittal. As we stated in *Hechevarria v. State*, 202 Ga. App. 502, 503-504 (414 SE2d 723) (1992), where we rejected a similar argument involving a variance in the brand name of a television contained in the indictment and the one found in the defendant's possession, "[a] variance between the allegata and probata is not fatal unless it misinforms the defendant as to the charges against him or leaves him open to subsequent prosecutions for the same offense. Since it does not appear that [Hesterlee] was misled or prejudiced, it was not error for

the trial court to deny [his] motion for directed verdict." (Citations and punctuation omitted.) Moreover, our decision in *Ewing v. State*, 169 Ga. App. 680, 681 (1) (314 SE2d 695) (1984), relied upon by Hesterlee, does not demand a different result because the description of the gun was an unnecessary fact contained in the indictment which need not be proven.

2. Next, Hesterlee maintains that the trial court erred in denying his motion to dismiss[1] his court-appointed attorney based upon his disappointment in the manner in which the defense was being conducted. Hesterlee asserts that the trial court's failure to grant this motion resulted in an abridgment of his constitutional right to counsel.

As we recently stated in *Mack v. State*, 209 Ga. App. 104, 106-107 (2) (432 SE2d 680) (1993), "[a] criminal defendant does have a constitutional right to be defended by counsel of his own selection whenever he is willing and able to employ such counsel. However, an indigent criminal defendant does not have an absolute right to discharge one court-appointed counsel and have another substituted in his place. A request of this sort addresses itself to the sound discretion of the trial court." (Citations and punctuation omitted.) We find that the trial court did not abuse its discretion in denying this motion.

In his pro se enumeration of error,[2] as asserted below in his motion to dismiss, Hesterlee claims that his trial counsel was ineffective because he failed to adequately prepare for his defense and expressed an intention to withdraw from representation on several occasions. A hearing was held below on Hesterlee's motion for a new trial at which time this issue was considered before the trial court. However, we find no merit in these contentions.

"The bench mark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. In order to prevail on an ineffectiveness claim, a convicted defendant must show (1) that counsel's performance was deficient, i.e., that counsel's performance was not reasonable under all the circumstances, and (2) that this deficient performance prejudiced the defense, i.e., that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The mere fact that defendant's counsel at-

---

[1] Hesterlee filed his pro se motion to dismiss on September 11, 1992, although it was dated September 8, 1992, one day before the beginning of the three-day jury trial in this case.

[2] In *Huggins v. State*, 173 Ga. App. 457 (5) (326 SE2d 821) (1985), we likewise considered pro se enumerations of error on the ineffectiveness of counsel submitted by an appellant although he had been represented on appeal by appointed counsel.

tempted to withdraw from the case . . . does not demonstrate deficient performance." (Citation and punctuation omitted.) *Middlebrooks v. State*, 208 Ga. App. 23, 24 (430 SE2d 163) (1993). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Assuming arguendo that counsel's failure to adequately prepare Hesterlee's defense was unreasonable, considering the overwhelming evidence of Hesterlee's guilt of the offenses charged, we cannot say that Hesterlee's defense was prejudiced as a result of such deficiency, a necessary requirement in a claim of ineffectiveness. *Williams v. State*, 207 Ga. App. 418 (427 SE2d 787) (1993). Cf. *Jowers v. State*, 260 Ga. 459 (396 SE2d 891) (1990). Accordingly, we must agree with the trial court that Hesterlee was not denied effective assistance of counsel.

3. Lastly, Hesterlee through counsel and pro se asserts that the trial court erred in denying his motion to suppress the victims' in-court identification of him as the assailant because such testimony was based on the victims' tainted view of him at a probation revocation hearing. We disagree.

"Whether a subsequent in-court identification is tainted depends on all the circumstances of the case. Conviction based on eyewitness identification at trial following a pretrial identification . . . will be set aside only if the [pre-trial] identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Furthermore, even if a pre-trial identification is tainted, an in-court identification is not constitutionally inadmissible if it does not depend upon the prior identification but has an independent origin." (Citations and punctuation omitted.) *Taylor v. State*, 203 Ga. App. 210, 211 (2) (416 SE2d 554) (1992). Likewise, in *Foster v. State*, 156 Ga. App. 672 (2) (275 SE2d 745) (1980), relied upon by Hesterlee, we recognized that a witness' in-court identification may be admitted so long as it has an independent origin from an illegal identification procedure.

Pretermitting the issue of whether the pre-trial identification of Hesterlee at the probation revocation hearing was impermissibly suggestive, inasmuch as the record on appeal does not contain a transcript of such hearing, we find that the trial court did not err in admitting the victims' in-court identification of Hesterlee. The victims' in-court identification of Hesterlee was based upon an independent foundation, that is, their visual observation of Hesterlee during the tumultuous incident.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 9, 1993 —
RECONSIDERATION DENIED SEPTEMBER 22, 1993.

*Robert L. Ferguson*, for appellant.
*Robert E. Keller, District Attorney, Albert B. Collier, Assistant District Attorney*, for appellee.