## A94A1798. PUGH v. THE STATE.
(448 SE2d 16)

Blackburn, Judge.

Following a trial by jury, the appellant, Anthony Pugh, was convicted of one count each of armed robbery, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon, each offense stemming from the April 19, 1992, robbery of a motel patron. The trial court denied Pugh's motion for new trial, and this appeal followed.

The evidence viewed in the light most favorable to the jury's verdict shows that at approximately 11:30 p.m. on April 19, 1992, a man entered Peter Michael Bowen's motel room at the Villager Lodge in Savannah, aimed a silver revolver at his head, and demanded money and jewelry. The man hit Bowen on the head with the handle of the revolver and Bowen gave the man $40 and his wallet as demanded. Thereafter, the assailant pulled the telephone's wires from the wall, instructed Bowen to lie down on the floor, and fled the scene.

The police were summoned, and during the ensuing investigation, Bowen was shown a photographic array from which he identified Pugh as his assailant. Bowen also identified Pugh as his assailant at the preliminary hearing and during trial. In addition, a 17-year-old accomplice testified at trial that he remained in an automobile outside the motel room and saw Pugh rob the motel patron. Another accomplice gave an investigating officer a custodial statement implicating Pugh in the robbery. After the jury returned its verdict in the initial stage of the trial, the State, without objection, produced certified copies of Pugh's prior convictions for two counts of possession of a controlled substance, one count of possession of less than one ounce of marijuana, and one count of entering an automobile with the intent to commit a theft.

1. Initially, Pugh asserts that the jury's verdict was strongly against the weight of the evidence and the State did not meet the liberal burden of proof established in *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We disagree. Viewing the

evidence based upon the standard enunciated in *Jackson*, there was ample evidence from which a rational trier of fact could determine Pugh's guilt of the offenses charged beyond a reasonable doubt. Id.; *Hesterlee v. State*, 210 Ga. App. 330 (1) (436 SE2d 32) (1993).

Although Pugh testified that he did not rob the motel patron, the jury was authorized to and did reject Pugh's testimony in light of the testimony provided by the victim, an investigating officer and two accomplices. While Pugh further challenges the reliability of the victim's eyewitness identification testimony, this court does not weigh the evidence, resolve conflicts in the evidence, or determine witness credibility. Id. Such tasks, including the determination of the reliability of identification testimony, is within the province of the jury. Id.; *Davis v. State*, 158 Ga. App. 549 (8) (281 SE2d 305) (1981).

We likewise reject Pugh's assertion in his sixth enumeration of error that the verdict was based upon a sense of urgency created by the conditions in the jury room since the verdict was overwhelmingly supported by the evidence produced at trial.

2. Next, Pugh, an African-American, challenges the racial composition of the jury panel. Pugh did not question the make-up of the jury until after general voir dire was conducted by the State. However, Pugh "should have challenged the array when it was first put upon him. [Cits.]" *Smith v. State*, 199 Ga. App. 894 (1) (406 SE2d 532) (1991). " 'Georgia statutes and case law indicate . . . that a jury is "put upon" a defendant at the time that the jury array is seated and *voir dire* commences.' " *Guest v. State*, 186 Ga. App. 318 (1) (367 SE2d 105) (1988). Instead, Pugh waited until after the State conducted a portion of its voir dire before he challenged the array. The record before us does not show that Pugh did not have an opportunity to present his challenge in a timely manner. Id. Consequently, Pugh's challenge to the jury was untimely.

3. Pugh further argues that the trial court erred in sentencing him as a recidivist because the three prior convictions were based upon guilty pleas and the three convictions should have been counted as only one conviction. While Pugh challenged below the trial court's authority to sentence him to life in prison under the recidivist statute, Pugh did not raise those issues until he amended his motion for new trial. However, "[w]e do not reach the merits, for 'errors which raise issues for the first time in a motion for new trial or on appeal present nothing for review. (Cit.)' [Cits.]" *Alonso v. State*, 190 Ga. App. 26, 30 (7) (378 SE2d 354) (1989).

4. Next, Pugh asserts that the trial court erred in denying his motion for mistrial when two of the jurors knew co-defendant Joey Horton, who was a witness for the State. Horton participated in the other robberies for which Pugh was not convicted and pled guilty to those offenses. Although both jurors were excused for cause, Pugh

maintains that he was prejudiced by the comments made by them. One juror stated that she was Horton's high school teacher and she thought that Horton was a nice person and that Horton had performed well in her class. She further stated that she was shocked that he would be in trouble. The other potential juror grew up with Horton and had known him for a long time. In response to a question posed by defense counsel, the juror further stated that he and Horton were good friends. Contrary to Pugh's assertion, those statements were not inherently prejudicial and did not link Pugh to any other criminal violation. See *Frady v. State*, 203 Ga. App. 833 (418 SE2d 114) (1992). Moreover, Pugh has not shown that the statements influenced the minds of any member of the jury panel prejudicially to him. Id. Accordingly, the trial court did not abuse its discretion in denying his motion for mistrial.

5. In his fifth enumeration of error, Pugh argues that his trial counsel's performance was so ineffective that he was denied a fair trial. "When inadequate representation is alleged, the critical factual inquiry ordinarily relates to whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choices of trial tactics and strategy." (Citation and punctuation omitted.) *Veit v. State*, 182 Ga. App. 753, 757 (2) (357 SE2d 113) (1987). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

Our review of the record reveals that the errors asserted by Pugh were a matter of trial tactics which do not equate to ineffectiveness of counsel. *Sutton v. State*, 210 Ga. App. 247 (2) (435 SE2d 748) (1993). The record shows that trial counsel consulted with Pugh, presented available defenses, thoroughly cross-examined the State's witnesses, and adequately prepared for the trial. The record further reflects that Pugh was effectively defended at trial with trial counsel securing acquittals on two offenses and deadlocking the jury on five other offenses. See *Veit*, supra. Moreover, Pugh has failed to show that any alleged deficiencies prejudiced his defense. *Sutton*, supra. See also *Strickland v. Washington*, supra. Accordingly, we must agree with the trial court that Pugh was not denied effective assistance.

6. Lastly, Pugh asserts that the victim's identification testimony based on a pre-trial photographic array should have been suppressed because the individuals included in the array did not have similar physical features, and consequently, a new trial is warranted. However, Pugh failed to object to the admission of these photographs or to the identification testimony based on the photographic array provided by the victim and the investigating officer on this ground. Therefore, this issue is not proper for appellate review. "It is well es-

tablished that appellate courts may not consider objections to evidence not raised at trial." (Citation and punctuation omitted.) *Nelson v. State*, 210 Ga. App. 249, 250 (2) (435 SE2d 750) (1993). Accordingly, Pugh's conviction is affirmed.

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JULY 28, 1994 —
RECONSIDERATION DENIED AUGUST 18, 1994 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*C. Jackson Burch*, for appellant.
*Spencer Lawton, Jr., District Attorney, Ann M. Elmore, Assistant District Attorney*, for appellee.