### A96A0440. FERGUSON v. THE STATE.
(471 SE2d 528)

McMURRAY, Presiding Judge.

Defendant was charged in an indictment with a single count of armed robbery, in that, with the intent to commit theft, he "took from the person of Eric S. Wiley . . . a certain motor vehicle, a 1987 Chevrolet Blazer, . . . by use of a handgun. . . ." The evidence adduced at his jury trial revealed that about "[t]en minutes 'til twelve," on the evening of April 14, 1994, the victim, Eric S. Wiley, Jr., drove his "[19]87 S-10 Blazer" to the drive-through window at the Burger King on "Highway 85 and 138, Clayton County," in Riverdale, Georgia. As the victim "was sitting there waiting for [his] order, . . . [t]he passenger door opened up." The victim identified defendant as "the guy that was getting in." After defendant opened the door, "[h]e got in, [said] hey, partner, and [the victim] got out." Defendant had an "[a]utomatic handgun[, . . . and he] just pointed it at [the victim] when he got in." The victim "opened the driver's door and got out, squeezed out[, . . . and then] hollered into Burger King[:] car-jack, call the police." At this point, defendant "took off. He jumped over to the driver's seat and took off. The truck was still in drive. . . . He

proceeded west on 138." As defendant drove off, the victim heard "[s]hots were fired."

In ten minutes, the police arrived. The victim affirmed his description of a young man, about "[f]ive six, five seven, . . . dark complexion, [wearing] dark clothing, hat, [and] boots," and went home. Subsequently, the victim was summoned by the police to "report to Blockbusters, behind Blockbusters." There, the victim's Blazer was "backed off in the woods," near Radio Active Stereo. A suspect in custody was removed from a police car so the victim could take a look at him. The victim had no problem recognizing defendant. The victim affirmed that defendant's face, his clothing, his build, and his voice were the same as those of the person who robbed him.

Officer M. E. Taylor, with the City of Riverdale Police Department was performing uniform patrol in a marked patrol car at 1:00 a.m. He received a "lookout from Clayton County Police Department in reference to a black Blazer, Chevrolet Blazer, that had been . . . taken in a robbery, a car-jacking." He was traveling northbound on Highway 85 when he "observed what appeared to be a black Blazer parked in the [Radio Active Stereo] parking lot. . . ." As Officer Taylor was "watching the vehicle [he saw] nobody else in the parking lot, [and saw no] other vehicles except for this vehicle here." In "probably less than ten seconds," Officer Taylor turned his patrol car around, but by the time he returned to the parking lot, he saw nothing. The vehicle was gone. It appeared that "the vehicle had pulled forward, went over the curb, went through a grassy area . . . and had parked facing back . . . behind some small trees . . . which partially obscured it from the roadway. . . ." Officer Taylor surmised anyone in the Blazer would have "had to [run] into the trees because there was no time . . . for them to have gotten anywhere back this way without me seeing them, . . . that there just wouldn't have been enough time." Officer Taylor summoned assistance and "got the area completely blocked off." "The area was secured where nobody could have gotten into the woods or gotten out of the woods. Once we got it secured, there was no way. We [the police] had complete view of the whole area surrounded." A canine unit was summoned because of the possibility of two armed robbery suspects. After defendant was apprehended, the officers continued searching in the woods, but no other suspects were found.

Officer Richard Hudson of the Riverdale Police Department is the certified handler of the police dog, Buster. "Buster is trained for several different tasks. Evidence search, tracking, criminal apprehension and narcotic detection work." On the evening of April 14, 1994, Officer Hudson was "called out specifically to track down a person behind Radio Active." Advised that the suspect was armed, Officer Hudson "got on the PA system of the police vehicle and gave

several warnings that [he] was sending a police dog in the wooded area to locate whoever fled from the vehicle." Officer Hudson had all law enforcement officers "step out of the woods and set up a perimeter around the wooded area." When Buster was released from his leash, he "did his grid pattern, his zigzag search in the area, hop[ing] to gain the abundance of scent if somebody was laying down." Officer Hudson saw Buster "drop his nose to the ground which . . . [indicated] that he was on a scent." By the time Officer Hudson caught up with Buster, he heard another "officer say we've got him in custody." Officer Hudson let Buster continue because "[h]e might be going after a second suspect. . . . We end[ed] up at the exact location where they had placed the Defendant in custody," Buster "never picked his nose up indicating he stayed on the track the whole time." Buster also located a hat on the ground near defendant. The police never recovered any gun or any second suspect.

Officer Ed Mashburn of the Riverdale Police Department was "part of the perimeter set-up." After Officer Hudson gave his warning and sent in the police dog, a "male exited the wood lines. . . . He was in dark clothing." This was defendant. "He was breathing heavy and sweating like he had been running." Officer Mashburn "gave him the command to get on the ground." After defendant was apprehended, he was turned over to Sergeant Chris Butler of the Clayton County Police Department, who "advised him of his Miranda Rights." Sergeant Butler then "conducted a show up [sic] identification. The Defendant was exited out the vehicle and, . . . within a few seconds, he was identified as being the perpetrator of the armed robbery. . . . There was no hesitation," on the part of the victim, in identifying defendant as the one that robbed him. As Sergeant Butler was taking a written statement from the victim, defendant "made several attempts in a brief few seconds to get the attention of the victim and have him talk to him." In so doing, defendant stated in the presence of the victim "that he had been dropped off by a friend at that location and he denied any involvement in the armed robbery." Defendant testified in his own defense, denying that he was the armed robber and claiming that he was in those woods at that time and place only to answer the call of nature.

The jury found defendant guilty as charged. His motion for new trial was denied, and this appeal followed. *Held*:

1. Defendant filed a pretrial motion to suppress any identification of him as the armed robber based on the one-man showup. After a hearing, the trial court denied this motion and that ruling is defendant's first enumeration of error. Defendant argues that the one-on-one showup at the scene was impermissibly suggestive and, under the totality of the circumstances, created a substantial likelihood of irreparable misidentification.

"There is 'no per se exclusionary rule applied to pre-indictment confrontations. (Cit.)' *Yancey v. State*, 232 Ga. 167, 169 (205 SE2d 282) (1974). 'Pre-indictment confrontations should be scrutinized to determine if they are unnecessarily suggestive and conducive to irreparable mistaken identification. The totality of the circumstances must be viewed to determine if there is a "likelihood of misidentification which offends against due process and 'the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, (and) the level of certainty demonstrated by the witness at the confrontation.' (Cit.)" (Cit.)' *Towns v. State*, 136 Ga. App. 467, 468 (1) (221 SE2d 631) (1975), applying the factors enumerated in *Neil v. Biggers*, 409 U. S. 188 (93 [SC] 375, 34 LE2d 401) (1972)." *Johnson v. State*, 209 Ga. App. 632, 633 (2) (434 SE2d 169).

At the hearing on defendant's motion to suppress identification in the case sub judice, the victim, Eric S. Wiley, Jr., testified that the robber was only "about two feet, a foot" away from him. He affirmed that the "light inside c[a]me on[,]" when defendant opened the door. The victim looked at the robber "[a]bout ten seconds." He was able to describe a young male with a dark complexion, dressed all in black, including boots and a black or blue cap. When summoned by the police, the victim had no problem recognizing defendant. The victim recognized the features of defendant's face, the clothes he was wearing, and defendant's voice. The victim confirmed that he had no doubt in his mind that defendant was the man who robbed him. Sergeant Butler testified that the showup was performed at the scene where the victim's stolen vehicle was found, within two hours of the armed robbery and less than one mile from the site where it was stolen.

" '(P)rompt on-the-scene confrontations and identifications, though inherently suggestive because of the presentation of a single suspect, (nevertheless) are permissible in aiding a speedy police investigation and . . . where possible doubts as to identification need to be resolved promptly, such on-the-spot identifications promote fairness by enhancing the accuracy and reliability of identification, thereby permitting expeditious release of innocent subjects. (Cit.)' *Bennefield v. Brown*, 228 Ga. 705, 706 (3) (187 SE2d 865) (1972)." *Johnson v. State*, 209 Ga. App. 632, 633 (2), supra. In the case sub judice, the arrest of defendant was near in time and proximity to the crime, and immediately adjacent to where the stolen vehicle was abandoned moments before Officer Taylor arrived on the scene. Defendant, the only suspect flushed out of the woods by the trained canine, was wearing all black as described by the victim and his

physical appearance matched the particulars given to police by the victim. "The trial court's determination that there was, under the totality of the circumstances, no likelihood of irreparable misidentification is supported by the evidence, is not clearly erroneous, and is therefore affirmed. See *Hood v. State*, 199 Ga. App. 774 (406 SE2d 120) (1991)." *Johnson v. State*, 209 Ga. App. 632, 633 (2), 634, supra.

2. Defendant enumerates the general grounds. He argues he was entitled to a directed verdict of acquittal because, once the fatally flawed identification testimony is eliminated, the State's remaining circumstantial evidence is insufficient to exclude the reasonable hypothesis of his innocence, as established by uncontradicted alibi witnesses.

" 'On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the (defendant) no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204); *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381).' *Dolphus v. State*, 218 Ga. App. 565 (462 SE2d 453). ' "Conflicts in the testimony of the witnesses, including the (S)tate's witnesses, is a matter of credibility for the jury to resolve. (Cits.) As long as there is some (competent) evidence, even though contradicted, to support each fact necessary to make out the (S)tate's case, the jury's verdict will be upheld. (Cit.)" *Searcy v. State*, 236 Ga. 789, 790 (225 SE2d 311).' *Grier v. State*, 218 Ga. App. 637 (1) (463 SE2d 130). 'The testimony of a single witness is generally sufficient to establish a fact.' OCGA § 24-4-8." *Brewer v. State*, 219 Ga. App. 16, 17 (1) (463 SE2d 906).

In the case sub judice, the victim's in-court identification of defendant as the armed robber is direct evidence of guilt. *Johnson v. State*, 216 Ga. App. 858, 861 (4) (456 SE2d 251). We have held in Division 1 that the trial court did not err in failing to suppress the identification testimony. Theft of an automobile may constitute armed robbery. OCGA § 16-8-41 (a); *Roberts v. State*, 228 Ga. 298, 299 (2), 300 (185 SE2d 385). The evidence that defendant entered the victim's motor vehicle with a handgun pointed at the victim and drove off in the victim's Blazer is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, supra, to authorize the jury's determination that defendant is guilty, beyond a reasonable doubt, of armed robbery as alleged in the indictment.

*Judgment affirmed. Johnson and Ruffin, JJ., concur.*

DECIDED MAY 14, 1996.

*Thomas S. Barton*, for appellant.
*Robert E. Keller*, District Attorney, *Todd E. Naugle*, Assistant District Attorney, for appellee.