## A99A2445. MITCHELL v. THE STATE.
### (529 SE2d 169)

BARNES, Judge.

Eugene Mitchell was indicted for armed robbery and possession of a knife during the commission of a crime. A jury convicted him on both counts, and the trial court sentenced him to serve twelve years for the armed robbery and five years concurrently for the knife possession. Mitchell appeals, arguing that insufficient evidence supports his conviction; that admitting evidence at trial of his post-arrest silence violated his privilege against self-incrimination; that his identification as a suspect at a "showup" violated his due process rights; that the Valdosta Police Department policy of destroying field notes violated his due process and confrontation rights; that his trial counsel was ineffective; and that he was denied his right to be defended by counsel of his own selection. After considering each of these enumerations, we affirm.

We view the evidence on appeal in the light most favorable to the verdict and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility but only determine if the evidence is sufficient to sustain the convictions. *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997).

Construed to support the verdict, the evidence at trial showed that around 11:00 a.m. on April 2, 1997, a black man with a sweatshirt hood over his head and a bandanna tied over the lower half of his face robbed Vallorbe Real Estate Management Company. The victim testified that she looked up from her desk and saw the robber

standing before her holding a knife. He threw a black bag onto her desk and said, "[p]ut the money in the bag and don't say a word." The robber then reached over the desk, pointed the knife at the victim, took the cash box, and left.

The police arrived, and the victim described the robber as a young black man wearing a dark sweatshirt with some kind of printing on it. With that description, the police began searching the neighborhood. Within about 15 to 20 minutes, they returned and asked her to look through her plate glass storefront and see if she could identify anyone outside as the robber. She could not, and the police let the first suspect go. Shortly thereafter, the police again asked her to look outside and see if she could identify anyone as the robber. This time she positively identified Mitchell as the robber, and he was arrested.

Detective McGraw testified that he heard radio traffic about an armed robbery and went with his partner to help secure the area. He heard another officer say the suspect was running along a canal parallel to the road, where the detective was located, then saw the suspect jump the canal and run around a house. Detective McGraw ran after him and, as he turned the corner, came upon another officer arresting the suspect. Detective McGraw picked up the bag on the ground next to the suspect and found money and paperwork from Vallorbe inside it. He identified Mitchell as the suspect he had been chasing.

Mitchell testified in his defense, explaining that, while walking through the area, he saw a black man run through a fence gate, throw a bag on the ground, and run off. Mitchell testified that he picked up the bag, looked inside, and saw papers and money. While he was looking, he heard someone say, "Did you see anybody run through there?"

He then realized someone was looking for the black man who had run off, and because he was also a black man holding the bag the other man dropped, he panicked and ran, keeping the bag because he was afraid his fingerprints would be on it. He stopped when a police officer with a drawn gun ordered him to do so.

Mitchell also presented two other witnesses, both nurses from the jail, who testified that he had unusual, remarkable eyes that changed color.

1. Mitchell contends that insufficient evidence supports his convictions of armed robbery and possession of a knife while committing a crime. We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Mitchell guilty beyond a reasonable doubt of the offenses charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Mitchell contends that the victim's identification of him during an impermissibly suggestive showup gave rise to a substantial

likelihood of irreparable misidentification. See *Simmons v. United States*, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968). We first consider whether the identification procedure was impermissibly suggestive and note that we have held that on-the-scene confrontations and identifications are inherently suggestive because of the presentation of a single suspect. *Ferguson v. State*, 221 Ga. App. 415, 418 (1) (471 SE2d 528) (1996). We then consider whether the situation presented a substantial likelihood of irreparable misidentification.

[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, and the level of certainty demonstrated by the witness at the confrontation.

(Citations and punctuation omitted.) Id.

In the case before us, Mitchell was arrested within an hour and in the immediate neighborhood of the robbery. The victim testified that the robber stood before her desk in full daylight, then reached over her desk and grabbed the cash box. When she first identified him, "his face was very fresh in [her] mind." She positively identified him at the showup and at trial, testifying that she remembered his eyes, and Mitchell himself presented two witnesses who testified that he had unusual eyes. Finally, when caught, Mitchell was carrying the bag used in the robbery, which contained money and paperwork with the name of the victim's company on it. The trial court's determination that no likelihood of irreparable misidentification existed under the totality of the circumstances is supported by the evidence, is not clearly erroneous, and is therefore affirmed.

3. Mitchell argues that the trial court erred in admitting evidence of his post-arrest silence, in violation of his Fifth Amendment privilege against self-incrimination. However, trial counsel did not object to the cross-examination. While in most instances failure to object would waive this issue (see, e.g., *Pye v. State*, 269 Ga. 779, 787 (14) (505 SE2d 4) (1998)), Mitchell also alleges that his trial counsel was ineffective for failing to object to the prosecutor's cross-examination of him regarding his silence after the investigating detective told him he did not have to give a statement. We will consider Mitchell's argument in the context of his ineffective assistance of counsel claim.

4. We must affirm a trial court's finding that a defendant has not been denied effective assistance of counsel unless it is clearly erroneous. *Kelly v. State*, 267 Ga. 252, 253 (2) (477 SE2d 110) (1996).

In order to establish ineffectiveness of trial counsel under *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984), appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense.

*Stephens v. State*, 265 Ga. 120, 121 (2) (453 SE2d 443) (1995).

(a) On direct examination, Mitchell testified that after he was taken to the police station, he went into a back office where a detective began asking him about a knife. He testified that he told the detective he did not know anything about a knife and then the detective read him his rights. At that time, Mitchell testified that he told her he would rather not make a statement because he was not sure what he had gotten himself into. He was then taken to the sheriff's department and booked.

On cross-examination, the State asked Mitchell if he had talked to the detective about the case. He answered,

> No, I didn't talk to her about the case. She was asking me questions that I didn't know answers to. She kept asking me where is the knife and things like that. . . . And basically, I was telling her I don't know anything about a knife. They keep asking me about a knife. I told her the other officer had asked me about a knife. I don't know anything about one and I can't tell them anything about one. She asked me about it again and I told her I don't know. I can't tell you. And that was my only response to all that there. I never said I knew anything about it.

The following exchange then took place:

> Q: Isn't it true that you didn't want to — that you invoked your rights; you didn't want to talk to Detective Rofulowitz?
> A: That was before she told me that I could. I told her that I did not want to make a statement. She asked me if I wanted to make a statement; I told her no.
> Q: So, you're saying that you talked to her and then decided not to talk to her?
> A: Well, the only thing I told her was that I didn't know anything about the knife. And when she told me I could have got in there and not said anything at all by right, then I told her that's what I'd rather do. I'd rather not make a statement and I just won't say anything else.
> Q: Did you ever tell her . . . about you getting lost going from your house to pick up your wife?
> A: No, sir. Nobody —.
> Q: You never told her that, did you?

A: No, sir.

Q: You never told her, did you, that you just found this money on the streets, did you?

A: No, sir.

Q: You never told her that you just happened to walk in the middle of twenty police officers with the wrong bag, did you?

A: No, I never told her that. . . .

Q: But you did not ever tell her about you just picking up the money, finding the money?

A: No, because she told me I didn't have to make a statement and that's what I chose to do. I chose not to go into any detail about my involvement at all because I didn't want to say anything that could later be used against me, such as — I don't — I don't trust police at all. . . .

Later in the cross-examination, Mitchell reiterated that he had chosen to remain silent after being told he had the right to do so:

She told me I didn't have to say anything so I chose not to because I had already been seen or I had already been apprehended by the police with the bag and it did not look good at all on my part because I did have whatever it was that this person had taken from whoever he took it from. And so it didn't look good on my behalf, so I chose not to say anything.

The State, like any other party, has the right to conduct a thorough and sifting cross-examination and to pursue the specifics of a topic Mitchell introduced. *Wilkey v. State*, 215 Ga. App. 354, 355 (450 SE2d 846) (1994). Because Mitchell opened the door to this line of questioning during his direct testimony, *Smith v. State*, 258 Ga. 181, 182 (1) (366 SE2d 763) (1988); *Hollis v. State*, 191 Ga. App. 525, 528 (4) (382 SE2d 145) (1989), he cannot now complain that his trial counsel was ineffective for failing to object. Because such an objection would not have been sustained, Mitchell has failed to establish that trial counsel's performance was deficient.

The trial court did not err in concluding that Mitchell's trial counsel was not ineffective due to his failure to object to the cross-examination outlined above.

(b) Mitchell contends that his counsel was ineffective also for failing to request a charge on his Fifth Amendment right to remain silent. While appellate counsel argued during the hearing on Mitchell's motion for a new trial that trial counsel failed to request a charge on the defendant's right to remain silent, he did not ask trial counsel about the reasons behind his failure to request such a charge.

Trial counsel may not have asked for the charge to avoid calling attention to Mitchell's assertion of his right to remain silent. The trial court's finding that trial counsel was not ineffective is supported by the presumption that, in the absence of contrary evidence, counsel's actions are presumed strategic in nature. *Milliken v. State*, 230 Ga. App. 810, 813 (2) (b) (498 SE2d 127) (1998).

(c) Mitchell contends that his counsel was ineffective for failing to call Officer Hudson as a witness. Officer Hudson brought the first suspect before the victim, and she could not identify him. Mitchell's trial counsel testified at the motion for new trial that his decision not to question Officer Hudson was strategic. He had interviewed Officer Hudson and decided that his testimony would be more damaging than helpful to Mitchell. Therefore, he decided not to call him as a witness. It is well settled that "strategic choices made after thorough investigation are virtually unchallengeable." (Citation and punctuation omitted.) *Stephens v. State*, supra, 265 Ga. at 121. The trial court did not err in finding that Mitchell's trial counsel was not ineffective for failing to call Officer Hudson as a witness.

(d) Finally, Mitchell contends his trial counsel was ineffective for failing to investigate and prepare his case sufficiently. Mitchell points out that several testifying officers mentioned witnesses who had pointed them toward evidence or toward the suspect, but his trial counsel did not interview any of them. However, during the motion for new trial, Mitchell's new counsel did not question the trial counsel regarding his failure to investigate and interview these alleged eyewitnesses.

Pretermitting whether counsel's professional performance was deficient, Mitchell has failed to establish by a reasonable probability that, but for trial counsel's failure to interview the neighborhood eyewitnesses mentioned by the testifying officers, he would have been acquitted. The trial court did not err in concluding that Mitchell's trial counsel was not ineffective.

5. Mitchell argues that the trial court erred in denying his motion for mistrial due to prosecutorial misconduct. Mitchell contends that the Valdosta Police Department has a policy of destroying original field notes and that this policy violates his due process, fair trial, and confrontation rights because he cannot examine the police officers' first impressions. Further, he argues, the similarity of the different officers' reports suggests that the officers edit their stories to "conceal any flaws in the prosecution's case." Mitchell cites no authority for this argument.

The State responds first that the arresting officer, Detective Connor, testified that the police department has no policy regarding field notes and that every piece of paper that goes into the trash is shredded as a matter of routine. He does not keep a notebook; he

simply jots down on a small pad names, addresses, and other details while he is responding to a situation. He then uses those notes to write his official report when he returns to the station, and when he is done, his notes are shredded.

Mitchell has produced no evidence that the police department had a policy regarding field notes or that Detective Connor or any officer involved in this case edited their reports to conceal flaws in the prosecutor's case, or for any other purpose. While he argues that the similarity in the officers' reports suggests collusion, an equally plausible explanation for the similarity is that the officers saw the same things. We are not persuaded by Mitchell's arguments and conclude that the trial court did not err in refusing to declare a mistrial due to prosecutorial misconduct.

6. Finally, Mitchell argues that the State violated his Sixth Amendment right to be represented by counsel of his own choosing and seeks to have us consider letters to the trial court which are attached to his brief. We may not consider on appeal evidence that is not included in the record sent from the trial court. *Sun v. Bush*, 179 Ga. App. 80, 81 (4) (345 SE2d 85) (1986). Second,

> a criminal defendant does have a constitutional right to be defended by counsel of his own selection whenever he is willing and able to employ such counsel. However, an indigent criminal defendant does not have an absolute right to discharge one court-appointed counsel and have another substituted in his place. A request of this sort addresses itself to the sound discretion of the trial court.

(Citations and punctuation omitted.) *Hesterlee v. State*, 210 Ga. App. 330, 333 (2) (436 SE2d 32) (1993). We find that the trial court did not abuse its discretion in denying Mitchell's request for a different public defender.

*Judgment affirmed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 1, 2000.

*Bennett Law Firm, Michael S. Bennett, Sr., James T. Bennett*, for appellant.

*J. David Miller, District Attorney, Bradfield M. Shealy, Assistant District Attorney*, for appellee.