11760.   SAVANNAH ELECTRIC COMPANY *v.* LOWE.

1. Under sections 2718 and 2719 of the Civil Code (1910) it is not only the right, but the express duty, of street-railroad conductors to assign all passengers to seats in the cars in which they are riding, "so as to separate the white and colored races as much as practicable." To effectuate these provisions of law designed for the benefit and protection of both races, so as to preclude the possibility of racial contact and friction, conductors are invested with ample police powers. Under section 2719 it is a misdemeanor for any passenger, white or colored, to remain in any seat "other than that to which he may have been assigned." A reasonable construction of this power of a conductor includes not only the right to thus assign a seat at the time a passenger

enters the car, but the right to make such necessary reassignments as the exigencies of the traffic may require. For a violation by a passenger of the penal provisions of this statute, not only may he be ejected from the car, but he is subject to summary arrest by the conductor, without warrant. Civil Code, § 2719. Furthermore, under the general police powers vested in railroad and street-railroad conductors by sections 926 and 927 of the Penal Code, any passenger may be ejected or summarily arrested by the conductor for the violation within his presence of the penal provisions of this statute, or of any other penal statute or valid municipal ordinance, or for words or acts amounting to a breach of the peace.

2. In a suit for false imprisonment a plea of justification, while not admitting all the facts as alleged by the petition, does admit the act of detention. (*Smith* v. *Savannah Electric Co.*, 25 *Ga. App.* 59, 102 S. E. 549; *Rigden* v. *Jordan*, 81 *Ga.* 668, 7 S. E. 857; Civil Code (1910), § 4488); and where the arrest is made for a misdemeanor without a warrant, in order for the defendant to overcome the prima facie case thus made to arise it is incumbent upon him to plead and to prove that a criminal offense was committed by the plaintiff in the presence of the defendant or his agent making the arrest. Civil Code, § 4488; *Ratteree* v. *Chapman*, 79 *Ga.* 574, 579 (4 S. E. 684); *Kerwich* v. *Steelman*, 44 *Ga.* 198; *McPherson* v. *Chandler*, 137 *Ga.* 129, 130 (3) (72 S. E. 948); *Ocean Steamship Co.* v. *Williams*, 69 *Ga.* 251, 258, 5 C. J. 405.

3. "However loose and informal the plea of justification may be, when it is not demurred to, but is considered by the parties and the court as a sufficient plea of that character, and a trial is had under it, defects in it are not to be scrutinized after the trial is over; indeed it has been held that where the parties treat it as sufficient, the trial court should do so likewise." *Henderson* v. *Fox*, 83 *Ga.* 233 (3), 242 (9 S. E. 839), citing *Bryan* v. *Gurr*, 27 *Ga.* 378.

4. The infringement by a street-railway passenger of the provisions of some special rule or regulation of the State railroad commission, providing specifically and in detail the manner and method whereby the separation of the races is to be effected, but which rule neither does nor can (see *Southern Ry. Co.* v. *Melton*, 133 *Ga.* 277, 291, 65 S. E. 665; U. S. *v.* Keitel, 157 Fed. 396; U. S. *v.* Sandefuhr, 145 Fed. 49, 51) impose a penalty upon the passenger for its violation, while authorizing expulsion, does not authorize his arrest, in the absence of disorderly conduct. Thus, the rule of the State railroad commission, introduced in evidence by the defendant and given in charge by the court, providing "that the Savannah Electric Company, in seating passengers on all of its cars, shall seat white passengers from the front of the car towards the rear, and colored passengers from the rear of the car towards the front, and that conductors shall be required to enforce this rule strictly by requiring colored passengers, beginning with the first seat in the rear, to occupy such seat to its capacity before taking the next seat in front, and so on," while having the full effect of a valid and binding civil statute (*Union Dry Goods Co.* v. *Ga. Public Service Cor.*, 142 *Ga.* 841 (83 S E. 946, L. R. A. 1916E, 358); Civil Code, § 2663), and while under the statute law it might be held to have penal force as against the common carrier, its officers, agents, or employees (Civil Code §§ 2668, 2666, 2667), does not nor does it purport to provide a penalty for its violation by a passenger; and consequently the

infringement of such a rule by a passenger, unless, as here, it amounts also to a violation of the statute, would not, in the absence of disorderly conduct, authorize his arrest.

5. The plaintiff, in her petition against the street-railway company, set forth certain municipal ordinances of the City of Savannah which she alleged had been violated by the defendant, and which in effect provide for the furnishing of separate accommodations for white and colored street-railway passengers, by providing either separate cars or dividing the same car into separate divisions, each marked and designated by a described sign or placard so as to indicate for which race such part of the car is maintained. These ordinances further provide that any conductor or other official operating a street-car not so provided with indicating signs shall be guilty of a criminal offense, and that any person " wilfully occupying as a passenger " any part of a car other than that so set apart and designated for persons of his or her color shall on conviction be punished as for disorderly conduct. On the trial the ordinances were not formally introduced in evidence, and the defendant company excepts to the charge of the court relative thereto, (1) because the ordinances, for the reason that they were not formally tendered in evidence, were not properly before the court at all; (2) because the court erred in instructing the jury that " if there is a conflict between the State law and the city ordinances, then the State law takes preference," the contention being that any question of such a conflict was purely a question of law for determination by the court; and (3) because the court charged in reference to the ordinances as follows: " I want you to bear in mind, however, that if you find in this case that this plaintiff was not occupying a seat reserved under the city ordinance for white passengers, and where under the law she had a right to be, then she had a right to decline to move therefrom, and there would be no right on the part of the conductor to arrest her or expel her from the car." *Held*:

(*a*) While, in the absence of proof, the court cannot ordinarily take judicial cognizance of municipal ordinances (*Collier* v. *Schoenberg,* 26 *Ga. App.* 496, 106 S. E. 581), yet where, as here, the ordinances have been pleaded in the petition, and the trial court has certified that " while the ordinances pleaded were not formally tendered in evidence, they were read to the court in the presence of the jury," such treatment of them by counsel without objection will be taken as equivalent to a formal tender. *Ga. Excelsior Co.* v. *Hartfelder-Garbutt Co.,* 12 *Ga. App.* 797 (78 S. E. 611).

(*b*) Any question as to the validity of a municipal ordinance and whether or not it conflicts with a State statute is properly a question of law to be determined by the court. As we construe these ordinances, they do in a sense conflict with the plan and method of procedure outlined by the rule of the railroad commission; and since the commission has jurisdiction of the subject-matter, its order has superior and binding force and effect as a *civil rule,* to the exclusion of the municipal ordinance which attempts to legislate otherwise. Consequently, while it is true that the court charged the jury that even a violation by the defendant company of any obligation sought to be imposed upon it by the ordinances would not justify the plaintiff in transgressing the *statute law,* still it seems reasonably possible, if not probable, that the excerpts from the charge quoted relating to the ordinances might have been confusing to the jury, on the theory that, since the plaintiff

was undoubtedly occupying the rear portion of the car (either the second or third seat from the rear), she was therefore within her legal rights under the *ordinances* in so remaining, despite the direction of the conductor acting under the duty and authority of the *statute law* that she exchange her seat so as to occupy one further back.

6. The character of the person seeking damages for false imprisonment is not ordinarily in issue, so far as the mere right to recover is concerned; but where the petition alleges good character, which allegation is denied by the answer, evidence in support of good character becomes relevant in the consideration of the amount of damages. *Fire Asso. of Philadelphia* v. *Fleming,* 78 *Ga.* 733 (2) (3 S. E. 420); 19 Cyc. 365.

7. Under the statute law set forth in the first division of the syllabus, and under the undisputed evidence in the case, the conductor was acting within the reasonable scope of his rights, duty, and authority in directing the plaintiff to exchange her seat for another located behind her, the purpose being in this way to "separate the white and colored races as much as practicable;" and since, under such circumstances, the statute makes it a misdemeanor for any passenger, white or colored, to remain in any seat "other than that to which he may have been assigned," the undisputed refusal of the plaintiff to obey such direction authorized her arrest, and consequently she could not be entitled to damages therefor.

DECIDED AUGUST 23, 1921.

Action for damages; from city court of Savannah — Judge Freeman. July 10, 1920.

*Lawrence & Abrahams,* for plaintiff in error.

*Oliver & Oliver,* contra.

JENKINS, P. J. The plaintiff was a passenger of the defendant street-railway company. She brought suit for damages on account of her alleged unlawful arrest by the conductor of the defendant company. The company entered a plea of justification, based on the ground that the plaintiff had violated the regulations pertaining to the separation of the races. No objection was made as to the sufficiency of the plea of justification, but the case was tried upon the theory set up by a defense of that character. The jury found a verdict *in favor* of the plaintiff in the sum of $537, and the defendant company brought its exceptions to this court.

Section 2717 of the Civil Code (1910) provides that "all railways doing business in this State shall furnish equal accommodations, in separate cars, or compartments of cars, for white and colored passengers; but this section shall not apply to sleeping-cars." This section manifestly does not apply, however, to street-cars. These are dealt with in the next section (§ 2718), which provides: "All conductors or other employees in charge of such

cars shall be required to assign all passengers to their respective cars or compartments of cars, provided by the said companies under the provisions of the preceding section; and all conductors of dummy, electric, and street-cars shall be required, and are hereby empowered, to assign all passengers to seats on the cars under their charge, so as to separate the white and colored races as much as practicable; and all conductors and other employees of railroads and all conductors of dummy, electric, and street-cars shall have, and are hereby invested with, police powers to carry out said provisions." For a failure to obey the requirements of this section passengers are penalized by section 2719, as follows: "Any passenger remaining in any car, or compartment, or seat, other than that to which he may have been assigned, shall be guilty of a misdemeanor." The court on the trial gave in charge to the jury these two latter sections of the code, and also the rule of the railroad commission of Georgia quoted in the 4th headnote, to the effect that conductors of the Savannah Electric Company should require "colored passengers, beginning with the first seat in the rear, to occupy such seat to its capacity before taking the next seat in front, and so on." The plaintiff in her petition pleaded certain municipal ordinances of Savannah, the provisions of which she contended had been violated by the defendant company. These ordinances were read in the presence of the jury, without objection, and were treated in the charge of the court as indicated in the syllabus. They read as follows: "All companies, persons, firms, and associations operating street-cars in the city of Savannah are hereby required to furnish separate accommodations for white and colored passengers, and all white and colored passengers occupying seats in street-cars in the City of Savannah are hereby required to occupy the respective cars or divisions of cars provided for them, so that the white passengers shall occupy only the cars or division of cars provided for white passengers, and the colored passengers shall occupy only the cars or division of cars provided for the accommodation of colored passengers. All companies, firms, persons, and associations operating street-cars, in the City of Savannah shall furnish such separate accommodations, at their option, by the operation together of two or more cars, providing separate cars for white passengers and separate cars for colored passengers, or by furnishing separate

accommodations for white and colored passengers in the same car. When separate accommodation is furnished for white and colored passengers in the same car, the front part of the car shall be designated for white passengers, and the rear part of the car for colored passengers. When two or more cars are operated together, thus providing separate car or cars for white passengers, and separate car or cars for colored passengers, the front car or cars shall be designated for white passengers and the rear car or cars for colored passengers. The cars, or parts of cars, furnished for white and colored passengers respectively shall have placed conspicuously at each end of the car, or part of car, signs in plain letters, not less than two inches high, indicating by the words ' white ' or ' colored,' as the case may be, that such car, or part of car, is provided for the use of white passengers or colored passengers, as the case may be; and when open cars to be entered from the side of the cars are provided for the accommodation of both white and colored passengers, additional such signs shall be provided and placed conspicuously on the side of the cars so as to indicate thereby the portion of the car to be used by white and colored passengers respectively." " Any officer, agent, or employee of any company, person, or firm, who shall as superintendent or other officer of such company, or as conductor, motorman, or other employee of such company, operate any car not so provided with signs on the streets of the City of Savannah for the transportation of passengers, shall upon conviction thereof be fined not more than one hundred ($100) dollars, or by ·imprisonment not more than thirty (30) days for each such offense; and any white person wilfully occupying as a passenger any car or part of car not so set apart and provided for white passengers, and any colored person wilfully occupying as a passenger any car or part of car not so set apart and provided for colored passengers, shall be deemed guilty of disorderly conduct, and shall be punished by fine not exceeding one hundred ($100) dollars, or by imprisonment not exceeding thirty (30) days."

It would seem from the record that the car was not divided into separate divisions or compartments, but that placards indicating the method of seating the races were placed in the front and rear of the car. There is a conflict in the testimony as to which particular seat the plaintiff occupied as a passenger upon

the occasion in question. According to the conductor's evidence it was the third seat from the rear. According to her own evidence (which, however, is not exactly clear on this point) it might seem that she occupied the second seat from the rear. Without going into the testimony of the conductor, but setting forth the transaction solely according to the version given by the plaintiff herself, the record shows that she testified as follows: " The conductor came and touched me on the shoulder and asked me to move, that two white ladies were seated directly behind me. . . Why didn't I move? Well, the ladies were pointed to two seats above. The two ladies were seated in the rear of me, and after they were seated I didn't see any reason to move. . . I simply looked directly behind me to see the people who called my attention to it. I saw two white ladies directly behind me. . . Why did I undertake to tell them where to be seated, where they wanted to be seated? They were seated in the colored portion of the car. . . As to why I did not move back when my attention was called to it? Well, I would have moved back, but the ladies did not say anything, and they simply were able to move up." Referring to a different and later incident, when all the seats in front of her were occupied and she was again directed to change her seat, she testified: " I said, ' Why should I move? You haven't given me any reason.' I didn't look back to see whether there were any other white folks on the car. He said, ' There is a white man and a white boy.' I said, ' Is that so? I did not know that.' After speaking to me like that, I saw the man and boy sitting down, I did not think of color any more. I sat there, and didn't pay any more attention. . . It is not true that the conductor told me three times to move to the rear seat and I refused; he told me twice." Q. " But at this particular time he told you to move, and you saw the white man and white boy were forced to sit in the negro compartment, and the conductor asked you to move, now I ask you to tell the jury why you didn't reply to the conductor?" A. " Well, this is the point that I looked at then. It was a man and boy. Had it been ladies I would have readily gotten up." Q. " So that, if it had been ladies, you would have moved, but being a man and boy, you refused to move?" A. " Yes, sir." Thus, from the testimony of the plaintiff herself, whatever question might suggest itself as to the reasonablenes's of

the direction given her in the first instance by the conductor, it would seem clear and undisputed that on the second occasion the plaintiff refused to exchange her seat for another in her rear, although the car in the·front of her at that time was filled with white passengers, and white passengers were standing or sitting in her rear, and that the reason given by her for her refusal on this occasion was that the persons in her rear were not ladies. There was other testimony given for the defendant, which would afford plain and palpable justification for the arrest, but which, for the purposes of this decision, it is not thought necessary to incorporate.

As we understand the case, the question is solely whether the defendant was authorized in arresting the plaintiff on account of her violation of the *statute law,* as properly administered by the officers and servants of the defendant company. It is not whether she may have violated also the provisions of the valid civil rule of the railroad commission, or whether either she or the defendant violated or observed the provisions of the municipal ordinances.

*Judgment reversed. Stephens and Hill, JJ., concur.*