S96A1557. KENNEBREW v. THE STATE.
(480 SE2d 1)

HUNSTEIN, Justice,

Appellant, Edgurado Kennebrew, was convicted of malice murder and felony murder in the death of Eric Snowden.[1] He was sen-

---

[1] The crimes were committed on December 15, 1994. Kennebrew was tried before a jury on July 10-12, 1995, and the jury found him guilty of both malice and felony murder on July 12, 1995. Kennebrew was sentenced to life in prison on the malice murder count and the felony murder count was vacated pursuant to OCGA § 16-1-7. Kennebrew filed a motion for new trial on August 11, 1995, which motion was denied on April 11, 1996. A notice of appeal was filed on May 10, 1996. The appeal was docketed in this Court on July 15, 1996 and submitted for decision on briefs.

tenced to life in prison for the malice murder conviction and he appeals from the court's denial of his motion for new trial. We affirm in part and reverse and remand in part.

1. The evidence shows that the victim, Snowden, was using a pay telephone outside a DeKalb County convenience store when a loud vehicle containing two females pulled up. Snowden asked the occupants of the vehicle to turn off their engine so he could hear the person with whom he was talking. When the occupants did not turn off the engine, Snowden cursed and again told them to turn off the car's engine. The two women then left and went to a motel room where Kennebrew was living. There, they told Kennebrew and codefendants Keith Ryals and Sean Phillips about the incident at the convenience store. Kennebrew stated he would "handle it" and all five returned to the convenience store. After passing the convenience store and identifying Snowden, Kennebrew and Ryals approached Snowden. Kennebrew picked up the receiver of an adjoining pay telephone, turned, and shot Snowden five times with an automatic weapon, striking Snowden's cheek, chest, mid-abdomen and right calf. Snowden died as a result of the gunshot wounds. Based on the evidence, the jury was authorized to find Kennebrew guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Kennebrew contends the trial court violated his right to counsel under the Sixth Amendment to the United States Constitution. At trial, Kennebrew was represented by a public defender from the DeKalb County Public Defender's Office. A motion for new trial was filed by privately retained counsel who later withdrew from representation of Kennebrew. Thereafter, Paul McCord, a second attorney from the DeKalb County Public Defender's Office, was appointed to represent Kennebrew on his previously filed motion for new trial and on appeal if necessary. Soon after the appointment of McCord, Kennebrew informed the trial court that he wished to pursue a claim of ineffective assistance of counsel against his trial counsel (the first public defender appointed) and requested that the court appoint new counsel.

Instead of granting the motion and appointing new counsel to represent Kennebrew on all grounds of his motion for new trial, the trial court denied Kennebrew's request for new counsel and required Kennebrew to proceed pro se on his claim of ineffective assistance of trial counsel. McCord argued all other asserted grounds for new trial. After hearing argument from both parties and the testimony of Kennebrew's trial counsel, the court denied the motion for new trial on all grounds.

In *Johnson v. State*, 266 Ga. 775 (9) (470 SE2d 637) (1996), we held that the trial court erred in addressing the merits of the defend-

ant's pro se motion for new trial on the issue of ineffectiveness of trial counsel while he was still represented by trial counsel and remanded the case to the trial court "to consider the allegation of ineffective assistance under the representation of new counsel." Id. at 779. Our holding there was based on the long standing rules that a defendant does not have the right to be represented by counsel and also to represent himself and that counsel cannot be expected to assert a claim of ineffective assistance against himself. Id. See *White v. Kelso*, 261 Ga. 32 (401 SE2d 733) (1991).

The only significant distinction between *Johnson* and this case is that Kennebrew was represented on his motion for new trial not by his trial counsel but by another member of the same public defender's office that represented Kennebrew at trial. The result is the same, however, because counsel, whether retained or appointed, cannot reasonably be expected to assert a claim of ineffective assistance of counsel against himself *or* any member of his firm or office where one member represents the defendant at trial and the other represents the same defendant on a motion for new trial or on appeal. *Ryan v. Thomas*, 261 Ga. 661, 662 (409 SE2d 507) (1991). Accordingly, we hold the trial court erred in addressing the merits of Kennebrew's motion for new trial on the issue of ineffective assistance of trial counsel without first appointing new counsel. That portion of the judgment is stricken, and the case is remanded for the trial court to consider the allegation of ineffective assistance under the representation of new counsel. A direct appeal from such ruling may be filed in accordance with *Johnson*, supra.

3. Prior to Kennebrew's trial, a key witness for the State, Vernon Lightburn, was arrested and charged in an unrelated murder. The trial judge held that the facts surrounding the unrelated murder were not to be discussed although Lightburn could be examined about the murder charge to the extent such questioning demonstrated bias or partiality. At trial, the State asked one of its law enforcement witnesses whether Lightburn was alleged to be the "shooter" in the murder with which he was charged. Kennebrew did not object to the question, but later argued to the court that he should be allowed to inquire into the specific facts of the murder to correct the impression that because one is not the shooter, they did not commit murder. The court denied Kennebrew's request but allowed a broad range of questions pertaining to the murder charge and the circumstances of Lightburn's arrest, Lightburn's status as a middle-level drug dealer, and whether Lightburn had made any deals with the State in return for his testimony. Kennebrew contends the court impermissibly restricted his cross-examination of Lightburn.

A criminal defendant has the right to cross-examine a witness

concerning pending criminal charges against the witness for purposes of exposing a witness' motivation in testifying, e.g., bias, partiality, or agreement between the government and the witness. *Davis v. Alaska*, 415 U. S. 308, 316-317 (2) (94 SC 1105, 39 LE2d 347) (1974); *Hines v. State*, 249 Ga. 257 (2) (290 SE2d 911) (1982). At the same time, the extent of cross-examination is within the sound discretion of the trial court. *Hines*, supra at 260 (2). Under these facts, we find the trial court properly limited Kennebrew's cross-examination of Lightburn to relevant issues tending to show potential bias or partiality.

4. During trial, Kennebrew sought permission to impeach a co-indictee by playing for the jury an entire tape-recorded statement given by the co-indictee. The trial court warned Kennebrew that if he played the entire tape recording rather than specific portions of the recording for purposes of impeachment he would be introducing evidence, thereby forfeiting his right to open and close final arguments. See OCGA § 17-8-71. Kennebrew played the entire recording and the trial court held that Kennebrew forfeited his right under section 17-8-71. Kennebrew contends the trial court erred because the tape-recorded statement was not "introduced" as it was not marked for identification or formally tendered into evidence. We disagree and hold that by playing the entire recorded statement Kennebrew introduced evidence for purposes of section 17-8-71.

Where an accused offers no testimony or evidence into the trial of the case, other than his own testimony, he has the right to open and close final arguments. OCGA § 17-8-71; *Scott v. State*, 243 Ga. 233, 234 (2) (253 SE2d 698) (1979). This Court has not before addressed the issue of when the presentation of oral evidence constitutes the introduction of evidence for purposes of section 17-8-71. In deciding the parameters of section 17-8-71, however, we have held that a defendant may not formally introduce evidence then later withdraw the evidence and retain the right to open and close final arguments. *Freeney v. State*, 129 Ga. 759 (59 SE 788) (1907). Similarly, we have upheld a defendant's right to open and close final arguments where the defendant merely held up documents referred to in his testimony but did not present such documents to the jury for its consideration. *Park v. State*, 224 Ga. 467 (4) (162 SE2d 359) (1968).

In this action, Kennebrew played the entire tape-recorded statement for the jury's consideration. Accordingly, all oral testimony contained on the tape was presented to the jury just as any other oral evidence when it was played and the jury considered the recorded testimony as any other item of evidence. Although the tape itself was not *formally* tendered by Kennebrew, the presentation of the tape's recorded contents to the jury was the equivalent of a formal tender of

evidence divesting Kennebrew of the right to open and close final arguments. See *Carter v. State*, 107 Ga. App. 571 (3) (130 SE2d 806) (1963) (paper defendant wrote on and showed jury was evidence although not introduced in the usual and regular way); *Savannah Electric Co. v. Lowe*, 27 Ga. App. 350 (5) (a) (108 SE 313) (1921) (evidence not formally tendered but read to court in presence of jury treated as though it was tendered into evidence). See also *Seavers v. State*, 208 Ga. App. 711 (3) (431 SE2d 717) (1993) (defendant forfeited right to open and close final arguments by identifying photograph and displaying it to jury); *Warnock v. State*, 195 Ga. App. 537 (2) (394 SE2d 382) (1990) (defendant lost right to open and close final arguments when he cross-examined witness with previous sworn statement and witness read excerpts to the jury).

We do not hold here that a defendant loses the right to make opening and closing final arguments by testifying about a document or statement without showing it to the jury or by cross-examining a witness.[2] Rather, our holding precludes a defendant from presenting evidence to the jury and retaining the right to open and close final arguments simply by failing or refusing to make a formal motion for the introduction of such evidence. A contrary result would be inconsistent with the intent of the statute. Whether through a defendant's own statement, see *Nero v. State*, 126 Ga. 554, 555 (55 SE 404) (1906), or under the guise of cross-examination, a defendant cannot be permitted to present evidence to the jury which should otherwise be formally offered.

*Judgment affirmed in part, reversed and remanded in part. All the Justices concur, except Fletcher, P. J., and Sears, J., who concur specially as to Division 4 and Carley and Hines, JJ., who concur in part and dissent in part.*

SEARS, Justice, concurring specially as to Division 4.

I fully concur with Divisions 1, 2 and 3 of the majority's opinion. However, I respectfully disagree with the analysis set forth in Division 4, which reasons that by cross-examining a State's witness with the playing of his recorded earlier statement, Kennebrew introduced evidence in his defense and thereby forfeited any claim to open and close final arguments under OCGA § 17-8-71.[3] As explained below, I

---

[2] Under OCGA § 17-8-71, courts must inquire whether evidence other than the oral testimony of a criminal defendant is "introduced," not the purpose for which such evidence is offered. Therefore, it is of no particular consequence that the recorded statement was offered on cross-examination for impeachment purposes. We disapprove of language in *Steele v. State*, 216 Ga. App. 276 (5) (454 SE2d 590) (1995) suggesting that mere cross-examination of a witness constitutes the "introduction of evidence" under OCGA § 17-8-71.

[3] OCGA § 17-8-71 literally states that "[i]f the defendant introduces no evidence, his counsel shall open and conclude the argument to the jury after the evidence on the part of

believe that this Court's earlier opinions show that within the meaning of section 17-8-71, a defendant only "introduces evidence" during cross-examination if he actually tenders something into evidence, not if he merely reads or plays documentary or recorded evidence for the jury's listening. Therefore, I believe that the trial court erred in ruling that Kennebrew waived his claim to open and close final arguments. However, because the record shows that the error in this case was harmless, I concur with the result reached in the majority opinion.

The question of what actions taken by the defense during cross-examination will result in the relinquishment of a claim to open and close final arguments was first addressed by this Court in *Freeney v. State*.[4] In that case, a woman accused of murder made a statement to the jury in which she referred to receipts for rents paid, exhibited the receipts to the jury, and actually handed the receipts to the jury. After this, at the request of the State's attorney, the receipts were introduced into evidence. Thereafter, the defense cross-examined a State's witness by showing him a different receipt and asking him to verify his signature thereon, and the defense also tendered that receipt into evidence. Because these receipts were actually introduced into evidence, this Court ruled that the defendant could not claim a right to open and close arguments. However, in so ruling, the court stated that:

> If it were clear that the rent receipts which formed the subject of the ruling in regard to the opening and conclusion of the argument[s] were merely read by the defendant as a part of her statement [to the jury], without objection from counsel or ruling thereon by the court, *and were not introduced into evidence . . . this would not have affected the right of her counsel to open and conclude the argument.*[5]

In *Park v. State*,[6] this Court reaffirmed the principle enunciated in *Freeney*. In *Park*, the defendant made a statement to the jury in which he referred to and displayed for the jury a written power of attorney and insurance documents. Based upon this, the trial court

---

the state is closed." As noted in the majority opinion, under the statute the defendant is still allowed to testify without forfeiting a claim to open and close arguments. The case law indicates that permitting a defendant to testify without affecting his claim to open and close arguments results from past tradition, when an accused was permitted under the previous Penal Code to make a statement to the jury, which was not considered to be evidence. See, e.g., *Freeney v. State*, 129 Ga. 759 (59 SE 788) (1907); *Scott v. State*, 243 Ga. 233 (253 SE2d 698) (1979).

[4] 129 Ga. 759 (59 SE 788) (1907)

[5] 129 Ga. at 764-775 (emphasis supplied).

[6] 224 Ga. 467 (162 SE2d 359) (1968).

denied the defendant's request to open and close arguments.[7] This Court reversed, and stated that with regard to a defendant's claim to open and close final arguments, the *Freeney* opinion "recogniz[es] a distinction between the effect of a defendant's exhibiting a document and of his introducing it in evidence."[8] In the former instance, the defendant does not waive a claim to open and close arguments; in the latter instance, he does waive such a claim.[9] In *Park*, it was ruled that the trial court erred in denying the request to open and close arguments because "the record contain[ed] no indication whatsoever that the documents mentioned by the defendant in his statement were introduced in evidence. The State does not even contend any more than that these papers were *exhibited* to the jury."[10]

Thus, this Court unquestionably has ruled that a defendant does not forfeit a claim to open and close final arguments if the defense instructs a witness simply to read from documents that are not introduced into evidence, refer to such documents, or exhibit such documents to the jury. I believe that in this case, Kennebrew's playing of the tape recording during cross-examination of the State's witness is analogous to the mere reading of documentary evidence and exhibiting such evidence to the jury, as occurred in *Freeney* and *Park*. As made clear by those cases, unless the evidence is *actually introduced into the body of evidence*, it does not affect a claim to open and close arguments under section 17-8-71.

When policy reasons are taken into consideration, I think that this is the better rule. For example, in this case, the defense played the tape-recorded statement because it was inconsistent to the testimony of the State's witness, and offered the defense an opportunity to impeach the witness's credibility. Thus, it is clear that the defense did nothing to *initiate* the playing of the tape recording, it merely responded (appropriately, I believe) to the witness's inconsistent testimony. In the future, the majority opinion will force defense lawyers in similar situations to choose between either raising the inconsistent statement of a State's witness or preserving their claim to open and close arguments. Presenting defense lawyers with such a Hobson's choice may well threaten the fundamental fairness required in all criminal prosecutions.

Furthermore, I believe that the rule enunciated in *Freeney* and *Park* would prevent the confusion and "slippery slope" likely to result from trial courts' application of the majority's reasoning. This Court

---

[7] Id. at 478-480.

[8] Id. at 478.

[9] Id. at 478-480.

[10] Id. (emphasis in original). The *Park* opinion also notes that this position was adopted by the Court of Appeals as early as *Hart v. State*, 88 Ga. App. 334 (76 SE2d 561) (1953). Id.

now has ruled that cross-examination with the playing of an earlier tape-recorded statement, without introducing it into evidence, prevents the defense from opening and closing final arguments. However, this Court also has ruled that when a State's witness reads from a document given to him by the defense, or exhibits such a document to the jury, without it being introduced into evidence, the defense does not waive its right to open and close arguments.[11] There is nothing to distinguish these separate acts by the defense, yet they lead to contrary results that can only (1) generate confusion; (2) lead to inconsistent applications by the trial courts; and (3) create a "slippery slope" where even the slightest action taken by defense counsel during cross-examination may operate as a waiver of the right to open and close final arguments. The principles enunciated by this Court in *Freeney* and *Park*, however, set forth a bright-line test that would provide clarity, require consistent application in the trial courts, and prevent unwarranted waivers of the right to opening and closing arguments.

Accordingly, for the reasons discussed above, I believe that the trial court erred in ruling that Kennebrew waived his right to open and close final arguments, and I disagree with the majority's reasoning in Division 4. However, my review of the record shows that there was overwhelming evidence of Kennebrew's guilt, including the testimony of Kennebrew's companion, who was an eyewitness to the events immediately preceding and following the murder, as well as the murder itself. Therefore, I believe the error in this case to have been harmless,[12] and I concur fully in the judgment affirming Kennebrew's conviction.

I am authorized to state that Presiding Justice Fletcher joins in this special concurrence as to Division 4.

CARLEY, Justice, concurring in part and dissenting in part.

I concur fully in Divisions 1 and 3 and in the holding of Division 4 of the majority opinion. Thus, I agree with the affirmance of Kennebrew's conviction and life sentence for malice murder. In Division 2, however, the majority remands for the trial court to consider the issue of the effectiveness of Kennebrew's trial counsel "under the representation of new counsel." I dissent to the remand because, in my opinion, the trial court has already addressed the issue of the effectiveness of Kennebrew's trial counsel, and Kennebrew has no right to have that issue presented in the trial court yet again by new appellate counsel.

As an indigent, Kennebrew was entitled to appointed counsel to

---

[11] See notes 2-8, supra, and accompanying text.
[12] See *Scott*, supra; *Seyden v. State*, 78 Ga. 105 (1886).

represent him at his trial and on appeal. However, it is undisputed that Kennebrew was represented by appointed counsel at his trial and on his motion for new trial. The issue presented for resolution is whether Kennebrew was entitled to appointment of *new* appellate counsel to represent him on his motion for new trial. In his motion for new trial, Kennebrew sought to raise the issue of the effectiveness of his trial counsel, but the appellate counsel appointed to represent Kennebrew was a member of the same public defender's office as trial counsel. Kennebrew urges and the majority holds that this, without more, is sufficient to require the appointment of new appellate counsel. I cannot agree.

If Kennebrew's right to raise the effectiveness of his trial counsel were an issue, the fact that his trial and appellate attorneys have a common employer would be relevant. For purposes of determining waiver, "an attorney cannot reasonably be expected to assert or argue his or her own ineffectiveness. . . . [Cit.]" *White v. Kelso*, 261 Ga. 32 (401 SE2d 733) (1991). "Likewise, it would not be reasonable to expect one member of a law firm to assert the ineffectiveness of another member. . . ." *Ryan v. Thomas*, 261 Ga. 661, 662 (409 SE2d 507) (1991). Unlike *White* and *Ryan*, however, this case does not present a question of waiver. The only question is whether Kennebrew was entitled to the appointment of *new* appellate counsel to pursue the ineffectiveness issue on the motion for new trial. In this regard, it is clear that Kennebrew has no right to the appointment of counsel of his choosing. *Rivers v. State*, 250 Ga. 303, 308 (6) (298 SE2d 1) (1982). Kennebrew's request to discharge appointed counsel and to appoint new counsel was addressed to the sound discretion of the trial court. *Burney v. State*, 244 Ga. 33, 35 (1) (257 SE2d 543) (1979). Because Kennebrew did not make an initial showing that the allegations of his trial counsel's ineffectiveness are potentially meritorious, the trial court did not abuse its discretion in refusing to appoint new counsel. See *Bailey v. State*, 240 Ga. 112, 113 (1) (239 SE2d 521) (1977); *Heard v. State*, 173 Ga. App. 543, 544-545 (1) (327 SE2d 767) (1985). See also 28 USC § 1915 (d).

> [N]ew counsel should not be appointed without a proper showing. A series of attorneys presenting groundless claims of incompetence at public expense, often causing delays to allow substitute counsel to become acquainted with the case, benefits no one. The court should deny a request for new counsel at any stage unless it is satisfied that the defendant has made the required showing. This lies within the exercise of the trial court's discretion, which will not be overturned on appeal absent a clear abuse of that discretion.

*People v. Smith*, 863 P2d 192, 200 (Cal. 1994). If a defendant provides neither a basis to support an ineffectiveness claim nor facts from which to infer a basis to support such a claim, a trial court should deny a motion to appoint new appellate counsel. *People v. Munson*, 662 NE2d 1265, 1284 (Ill. 1996). Simply put, it cannot be an abuse of discretion to fail to appoint new appellate counsel to pursue a potentially frivolous ineffective assistance of trial counsel claim. See *Phillips v. State*, 238 Ga. 497-498 (233 SE2d 758) (1977); *Hesterlee v. State*, 210 Ga. App. 330, 333 (2) (436 SE2d 32) (1993). To hold otherwise allows a defendant to obtain the appointment of new appellate counsel simply by filing a motion for new trial attacking the effectiveness of trial counsel. Accordingly, the initial focus should be upon the potential merit of the defendant's assertions of the ineffectiveness of his trial counsel. If, but only if, Kennebrew showed that his assertions were not frivolous, would the trial court have abused its discretion in failing to appoint new appellate counsel to present those claims in the hearing on the motion for new trial.

> [W]hen a defendant satisfies the trial court that adequate grounds exist, substitute counsel should be appointed. Substitute counsel could then investigate . . . a motion for new trial based upon alleged ineffective assistance of counsel.

*People v. Smith*, supra at 200.

The majority cites *Harris v. State*, 266 Ga. 775, 778 (9) (470 SE2d 637) (1996) as authority for its holding. However, we did not resolve a defendant's entitlement to new appellate counsel in *Harris*, since the trial court had already appointed new appellate counsel in that case and *Harris* raised no issue as to that appointment. Moreover, to the extent that *Harris* may suggest there is an absolute right to appointment of new appellate counsel based merely upon a defendant's post-conviction allegation of the ineffectiveness of his trial counsel, I believe that it should be overruled. A defendant can and should be required to make a preliminary showing that his allegations of the ineffectiveness of his trial counsel are not frivolous, so as to justify the time and expense of obtaining new appellate counsel. Here, the trial court properly required Kennebrew to make an initial showing as to the allegations of the ineffectiveness of his trial counsel. Had it found potential merit in any of those allegations, the trial court presumably would have appointed new appellate counsel to address those allegations on the merits. By failing to appoint new appellate counsel, however, the trial court presumably found no potential merit in any of Kennebrew's allegations. On appeal, Kennebrew makes no contention that any of his allegations have potential merit. Instead, he urges only that the trial court erred in failing to appoint

new appellate counsel to present those allegations. In my opinion, Kennebrew is entitled only to the opportunity to have *new* appellate counsel present potentially meritorious allegations of ineffectiveness of trial counsel. Accordingly, I would affirm the denial of the motion for new trial and I dissent to the majority's remand for the trial court's consideration of the ineffectiveness issue "under the representation of new counsel."

I am authorized to state that Justice Hines joins in this dissent as to Division 2.

DECIDED NOVEMBER 12, 1996 —
RECONSIDERATION DENIED DECEMBER 20, 1996.

*Paul J. McCord,* for appellant.

*J. Tom Morgan, District Attorney, Thomas S. Clegg, Desiree S. Peagler, Assistant District Attorneys, Michael J. Bowers, Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.