J-A03031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDI SNOWDEN | : | |
| | : | |
| Appellant | : | No. 402 WDA 2023 |

Appeal from the Judgment of Sentence Entered March 8, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005182-2022

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                **FILED: February 12, 2024**

Brandi Snowden (Appellant) appeals from the judgment of sentence

entered following her non-jury conviction of possession of a controlled

substance.[1]  After careful review, we affirm.

The trial court summarized the relevant facts underlying this appeal:

On June 6, 2022[,] at about 2015 hours, Officer [Ryan] Lawrence
observed [Appellant] at a bus stop standing up, leaning on a trash
can, nodding off.  Officer Lawrence and Officer Kerr[2] approached
[Appellant], let her know their observations and asked if she was
okay. [Appellant] responded that she was extremely tired. Officer
Lawrence[,] concerned for her welfare[,] requested her ID.
[Appellant] placed her purse on the ground and searched for her
ID.  While [Appellant] searched her purse[,] the Officer saw
syringes in plain view. [Appellant] tossed the syringes to the side
in her purse.  Officer Lawrence placed her under arrest.  The

_____

[1] 35 P.S. § 780-113(a)(16).

[2] Officer Kerr's first name does not appear in the certified record.

> Officer initially testified that he then asked to search [Appellant's] purse and that she agreed. On cross[-examination], the Officer testified that the search of her purse was incident to arrest. … Upon search of [Appellant's] purse, the Officer found the syringes, 7 stamp bags of heroin and fentanyl marked "Popeye[,"] and a Ziploc bag containing methamphetamine. Upon retrieval of the suspected narcotics, [Appellant] was taken to the station.

Trial Court Opinion, 7/7/23, at 2-3 (unpaginated; some capitalization modified; footnote added).[3]

On January 25, 2023, Appellant filed a motion to suppress evidence. Appellant argued she was unreasonably seized by law enforcement. Motion to Suppress, 1/25/23, at ¶ 3(o). After an evidentiary hearing on February 2, 2023, the trial court denied Appellant's motion. Trial Court Order, 3/8/23.

Following a stipulated bench trial, the trial court convicted Appellant of possession of a controlled substance. The trial court sentenced Appellant to nine months of probation on March 8, 2023. Appellant timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue[4] for our review:

---

[3] The trial court did not, as required by Pa.R.Crim.P. 581(I), "enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights." However, while a Pa.R.A.P. "1925(a) opinion is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing[,]" review is possible based on facts set forth in a Rule 1925(a) opinion. *Commonwealth v. Grundza*, 819 A.2d 66, 68 n.1 (Pa. Super. 2003) (citing *Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa. Super. 2002)).

[4] In her 1925(b) statement, Appellant also claimed law enforcement "unreasonably seiz[ed Appellant] without reasonable suspicion of criminal *(Footnote Continued Next Page)*

> Did the trial court err in denying suppression because police arrested [Appellant] without probable cause and, thereafter, conducted an unlawful search incident to arrest?

Appellant's Brief at 4.

Preliminarily,

> [a]n appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.[5] Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Prizzia*, 260 A.3d 263, 266 (Pa. Super. 2021) (citation omitted; footnote added).

---

activity." 1925(b) Statement, 6/7/23, ¶ 10.a. This contention is not addressed in Appellant's brief and is, therefore, waived. *See In Interest of T.Q.B.*, 286 A.3d 270, 273 n.5 (Pa. Super. 2022) (holding that issues raised in a Rule 1925(b) concise statement that are not developed in the appellate brief are abandoned).

[5] Pertinently, "[w]hen the suppression court's specific factual findings are unannounced, […] the appellate court should consider only the evidence of the prevailing suppression party … and the evidence of the other party" that remains uncontradicted. *In Int. of M.W.*, 194 A.3d 1094, 1097 (Pa. Super. 2018) (quoting *Commonwealth v. Millner*, 888 A.2d 680, 685 (Pa. 2005)).

In examining the totality of the circumstances, it is well-established that

we must give due weight … to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, **even a combination of innocent facts, when taken together, may warrant further investigation by the police officer**.

*Commonwealth v. Cunningham*, 287 A.3d 1, 11 (Pa. Super. 2022) (citation omitted; emphasis added). Further,

[w]e do not review the evidence piecemeal, but consider the totality of the circumstances in assessing whether probable cause existed…. If the evidence supports the findings of the trial court, those findings bind us and we may reverse only if the suppression court drew erroneous legal conclusions from the evidence.

*Commonwealth v. El*, 933 A.2d 657, 660 (Pa. Super. 2007) (citation omitted).

Where a defendant files a motion seeking to suppress evidence, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H); *see also id.*, Comment (stating that the standard of proof is a preponderance of the evidence). Further, "a defendant at a suppression hearing has the right to test the veracity of the facts recited in the affidavit in support of probable cause." *Commonwealth v. James*, 69 A.3d 180, 187 (Pa. 2013) (citation omitted). When testing the veracity of the facts recited in the affidavit, a defendant must make "a substantial preliminary showing [that] the affiant knowingly and intentionally,

or with reckless disregard for the truth, included a false statement in the affidavit." *Id.* at 188 (citation omitted).

We must address an additional preliminary matter concerning our scope of review. Both the Commonwealth and the trial court maintain this Court may not consider a police-worn body camera video that Appellant used when cross-examining Officer Lawrence.[6] At the suppression hearing, Appellant played a portion of the officer's body camera video that showed he had not, contrary to his prior testimony, requested consent to search Appellant's purse. Rather, he effectuated an arrest and thereafter conducted the search. *See* N.T., 2/2/23, at 13-14. On redirect examination, the Commonwealth relied on the video to bolster its argument that Appellant made no effort to explain the presence of syringes in her purse. *Id.* at 15. Although properly authenticated, Appellant neither marked the video as an exhibit nor moved for its admission into evidence. *Id.* at 13-15. The Commonwealth contended during its closing argument that "the video and body cam footage is not evidence, it has not been admitted as evidence, so it cannot be considered by the Court." *Id.* at 20.

On November 21, 2023, the parties filed a "Stipulation Order to Supplement Certified Record on Appeal" (Stipulation). The Stipulation

---

[6] The trial court merely concluded "the [o]fficer's body-cam video was never offered nor admitted into evidence." Trial Court Opinion, 7/7/23, at 5 (unpaginated). The Commonwealth's argument is discussed *infra*.

referred to and attached a section of the video the parties agreed "was played in open court at [Appellant's suppression hearing]." Stipulation, 11/21/23, at 1 (unpaginated). The Stipulation confirmed the video evidence "is necessary for appellate review and the ultimate resolution of this case." *Id.* at 2 (unpaginated). Significantly, the Stipulation explicitly stated the Commonwealth did not object to the video becoming a part of the certified record. *Id.* The video evidence was thereafter transmitted to this Court as a supplemental record. Thus, the Commonwealth waived this issue. *See* Pa.R.A.P. 302(a) (stating an issue cannot be raised for the first time on appeal).

Regardless, we conclude the video evidence is properly before us. We are guided by this Court's analysis in *Commonwealth v. Jones*, 271 A.3d 452 (Pa. Super. 2021).[7] In *Jones*, we examined as a matter of first impression whether we could consider a surveillance video not admitted in evidence—but played at trial—in ruling on a defendant's sufficiency of the evidence challenge. *See id.* at 456. The defendant stipulated at trial that the surveillance video was authentic, lodged no objection to the video being

_____

[7] We acknowledge the procedural posture of *Jones*, which involved the admissibility of evidence at trial, as opposed to a pre-trial hearing. This, however, reinforces the applicability of the holding. *See Commonwealth v. Wroten*, 257 A.3d 734, 741 (Pa. Super. 2021) ("In making the determination that these items are part of the certified record in this appeal, we are mindful of the relaxed rules of evidence attendant to preliminary hearings and other pre-trial criminal proceedings." (citations omitted)).

played, and the defendant cross-examined the witness who obtained the video concerning its contents. *See id.* at 455. On appeal, the defendant argued "this Court [could not] consider the video recording … because the video was not admitted in evidence." *Id.* at 456. The parties filed a "Limited Joint Stipulation" stating, "the parties agree that the video was not formally admitted into evidence at trial and that [a]ppellant **does not waive** his contention that the video cannot be considered in ruling on the sufficiency of the evidence." *Id.* at 456 n.2 (emphasis added).

> In concluding the video was appropriate for review, we explained
>
> where the trial court, in fact, made a determination that the video was admissible before it was played, the video was in evidence and became part of the record once it was played without objection, even though no formal motion to admit it in evidence was made. Although it appears that there is no Pennsylvania precedent addressing this situation, courts in other jurisdictions have recognized that when a recording is played to the fact finder for its consideration, the recording is admitted in evidence and becomes part of the record even if no formal motion is made for its admission. *Cull v. Commonwealth*, 2000 WL 311169 at *3 (Va. App. Mar. 28, 2000) (holding that "[i]rrespective of any characterization made by the trial judge, the contents of the tape were admitted into evidence when the jury viewed it"); *Kennebrew v. State*, 267 Ga. 400, 480 S.E2d 1, 4 (1996) (defendant admitted evidence where he played tape recording even though he did not move the recording into evidence).

*Id.* at 456-57 (footnote omitted); *see also Huber v. Etkin*, 58 A.3d 772, 780 n.8 (Pa. Super. 2012) (*en banc*) ("The decisions of courts of other states are persuasive, but not binding authority."). We further observed the defendant "not only failed to object that the video was admitted and failed to object to the trial court's consideration of it before the trial court's verdict, he

stipulated to the video's admissibility and used it in his case and in argument after the Commonwealth had rested." ***Id.*** at 457.

Instantly, Officer Lawrence's body camera video was played **without objection**. The Commonwealth's statement after the parties rested "that the video and body cam footage is not evidence," ***see*** N.T., 2/2/23, at 20, did not constitute a specific objection necessary to avoid waiver.[8]  Not only did the Commonwealth waive this argument by failing to lodge a timely objection, it also *consented* to our review of the body camera video in the Stipulation. Unlike the defendant in ***Jones***, the Commonwealth stipulated to the video becoming a part of the certified record without any limitations.  ***See*** Stipulation, 11/21/23, at 2 (unpaginated).

Even if the Commonwealth had neither waived its contention, nor consented to our review of the video by stipulation, we would conclude this Court may properly consider the video in evaluating Appellant's claim. Although not formally admitted as evidence, both parties relied on information from the video to advance their arguments.  Therefore, the video "was in evidence and became a part of the record once it was played without

---

[8] ***See Commonwealth v. Pacheco***, 227 A.3d 358, 374 (Pa. Super. 2020) (deeming a claim waived where the appellant waited until after the witness was excused before lodging an objection); ***Commonwealth v. Tucker***, 143 A.3d 955, 962 (Pa. Super. 2016) (holding appellant waived claim where he waited until after direct and cross-examination of the subject witness, and after the next witness's testimony, before raising objection).

objection…." ***Jones***, 271 A.3d at 456.  Accordingly, this Court will consider the police-worn body camera video in our review of the merits.[9]

The parties agree that Officer Lawrence was required to have probable cause to arrest Appellant and search her incident to arrest.

> Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." ***Commonwealth v. Rodriguez***, 585 A.2d 988, 990 ([Pa.] 1991). The question we ask is not whether the officer's belief was "correct or more likely true than false." ***Texas v. Brown***, 460 U.S. 730, 742 (1983).  Rather, we require *only a* "*probability*, and not a prima facie showing, of criminal activity." ***Illinois v. Gates***, 462 U.S. 213, 235 (1983) (citation omitted) (emphasis supplied).  In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009) (citations modified).  "Where probable cause to arrest does not exist in the first instance, any evidence seized in a search incident to arrest must be suppressed." ***In Int. of O.A.***, 717 A.3d 490, 495 (Pa. 1998) (citation omitted).

Appellant argues her arrest was primarily based on Officer Lawrence's observation of a syringe in her purse.  She maintains the other factors the Commonwealth and trial court relied on in justifying her arrest did not establish probable cause.  Appellant's Brief at 19.  In support, Appellant relies on ***Commonwealth v. Barr***, 266 A.3d 25 (Pa. 2021), and ***Commonwealth***

---

[9] Although we may consider the video, its limited usefulness to our analysis is discussed further *infra*.

*v. Hicks*, 208 A.3d 916 (Pa. 2019), as establishing why possession of an otherwise lawful object, "without other indicia of illegal activity, does not establish probable cause of criminal activity." Appellant's Brief at 17.

In **Hicks**, the Supreme Court considered a claim involving possession of a concealed firearm. The **Hicks** Court concluded police cannot detain an individual merely based on possession of a concealed firearm in public. **Hicks**, 208 A.3d at 936. The Court criticized *per se* rules that obviate the government's obligation to establish reasonable, individualized suspicion:

> Unless a police officer has prior knowledge that a specific individual is not permitted to carry a concealed firearm, and absent articulable facts supporting reasonable suspicion that a firearm is being used or intended to be used in a criminal manner, there simply is no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is alone suggestive of criminal activity.

*Id.* at 937.

Subsequently, in **Barr**, the Supreme Court held "that the smell of marijuana may be a factor, but not a stand-alone one, in determining whether the totality of the circumstances established probable cause to permit a police officer to conduct a warrantless search of a vehicle." **Barr**, 266 A.3d at 28. The Court

> [e]mphasize[d] that the realization that a particular factor contributing to probable cause may involve legal conduct does not render consideration of the factor *per se* impermissible, so long as the factor is considered along with other factors that, in combination, suggest that criminal activity is afoot. … **[T]he totality-of-the-circumstances analysis encompasses the consideration of factors that may arguably be innocent in nature**.

*Id.* at 41-42 (emphasis added).

The Commonwealth acknowledges possession of a syringe does not establish probable cause as a standalone factor, but counters that Officer Lawrence did not rely solely on his observation of syringes[10] in Appellant's purse. Instead, he relied on several factors to support Appellant's arrest: 1) her presence in a high crime area, 2) her "nodding off" at a bus stop, 3) her effort to "conceal" the syringe in her purse, and 4) her failure to explain her possession of the syringes. Commonwealth's Brief at 12-14.

Both parties cite to the analogous case of ***Commonwealth v. Bumbarger***, 231 A.3d 10 (Pa. Super. 2020), as supporting their respective positions. In ***Bumbarger***, the defendant was driving a vehicle with a passenger. *See id.* at 13. Trooper Murarik, who had prior experience with the defendant, saw the defendant and confirmed he had an outstanding warrant for his arrest. *See id.* After conducting a traffic stop and taking the defendant into custody, the Trooper spoke with the passenger, who was also a known drug user. *See id.* at 14. The Trooper believed the passenger was under the influence of a controlled substance and asked her to step out of the vehicle. *See id.* As she was exiting the vehicle, the Trooper observed two

---

[10] Appellant maintains that the body camera video evidences a single syringe, while the Commonwealth cites to relevant portions of the suppression hearing transcript establishing that the officer observed multiple syringes. Regardless, the number of syringes viewed by Officer Lawrence is irrelevant to our analysis.

syringes under the passenger seat. *See id.* The Trooper conducted a probable cause search of the vehicle[11] and recovered a firearm and methamphetamine. *See id.* at 14.

On appeal, the defendant challenged the trial court's denial of his suppression motion, following his convictions for drug and firearm offenses. *See id.* at 15. Relevantly, he claimed that law enforcement searched his vehicle without probable cause. *See id.* The defendant argued "the two syringes the Trooper claimed he observed when he had the passenger step out of the vehicle did not possess an incriminating character that was immediately apparent…." *Id.* at 15. In concluding his claim lacked merit, this Court relied on the following relevant facts:

> Here, Trooper Murarik approached the passenger of the vehicle as part of the lawful stop. Trooper Murarik knew [passenger], and knew of her drug use and sales history. [Passenger's] appearance reflected that she was under the influence of drugs. Moreover, when Trooper Murarik lawfully asked [passenger] to exit the vehicle in accordance with the lawful stop, he observed drug paraphernalia in plain view. Accordingly, we conclude that Trooper Murarik did not unlawfully detain [passenger] or ask her to exit the vehicle. Furthermore, given his observation of [passenger's] appearance, his knowledge of [passenger's] drug-use history, and the observation of the syringes, Trooper Murarik had reason to suspect criminal activity. Thus, Trooper Murarik had probable cause to search the vehicle.

---

[11] The **Bumbarger** case was decided prior to our Supreme Court's pronouncement in **Commonwealth v. Alexander**, 243 A.3d 177, 195 (Pa. 2020), that "warrantless vehicle searches required both probable cause and exigent circumstances."

*Id.* at 18 (citations and footnote omitted). We further recognized "hypodermic syringes are specifically included in the definition of 'drug paraphernalia[,]'" and "the circumstantial evidence in this case regarding the syringes supports the conclusion that they were drug paraphernalia." *Id.* at 19 (citation omitted).

> Furthermore, the location and unsecured nature of the syringes on the floor of the vehicle were not consistent with use of the syringes for medical purposes. Moreover, [passenger] appeared to be under the influence of drugs, and the syringes were in close proximity to her person in the vehicle. Upon having her attention directed to the syringes, [passenger] did not indicate that the syringes were for medical use. Also, [passenger] was known by Trooper Murarik to use and sell drugs. Given the totality of circumstances, it was reasonable for Trooper Murarik to believe that these syringes were being used for a criminal purpose. Thus, discovery of these syringes **in connection with the other relevant factors suggesting illegal drug use** constituted probable cause to search the vehicle.

*Id.* (citations omitted; emphasis added).

Instantly, we conclude Appellant's arrest, under the totality of the circumstances, was supported by probable cause. *See Barr*, 266 A.3d at 41-42. On direct examination, Officer Lawrence testified that he observed Appellant "nodding off" at a bus stop. N.T., 2/2/23, at 5. He elaborated on cross-examination that, prior to police engaging her, Appellant was leaning on a trash can for support. *Id.* at 11. Officer Lawrence testified that the area in which he interacted with Appellant was a "high drug area." N.T., 2/2/23, at 7. He further testified that syringes like those found in Appellant's purse are commonly used for the injection of illegal drugs, and that he believed

Appellant attempted to move the syringes out of sight to conceal them. *Id.* at 7, 12.

Under the totality of the circumstances, Officer Lawrence's observations support the trial court's conclusion that Appellant's arrest was lawful. *See also Commonwealth v. Laird*, 988 A.2d 618, 627 (Pa. 2010) (indicating that flight and concealment can constitute circumstantial proof of consciousness of guilt); *Commonwealth v. Jordan*, 212 A.3d 91, 97 (Pa. Super. 2019) (same).

We are not persuaded by Appellant's contention that the body-worn camera video supports her assertion that Officer Lawrence arrested her without probable cause. She maintains the video: 1) does not show her "nodding off"; 2) "only showed one syringe"; 3) showed that it was daylight[12] at the time of the interaction; and 4) showed that the interaction occurred "in the area's business district." Appellant's Brief at 19-21. While Appellant draws conclusions from the body camera video, she did not question Officer Lawrence regarding any of the above observations. Appellant effectively asks this Court to supplant the trial court's judgment regarding the record with our

---

[12] We note that neither party elicited testimony concerning the time of day at the suppression hearing. Despite the trial court's assertion that the police interaction occurred "at about 2015 hours," Trial Court Opinion, 7/7/23, at 2 (unpaginated), we do not consider this in our analysis. *See Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) ("Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.") (citations omitted)).

- 14 -

own.  The trial court watched the video at the suppression hearing and listened to the testimony of Officer Lawrence.  "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony."  **Commonwealth v. Luczki**, 212 A.3d 530, 542 (Pa. Super. 2019).  Appellant failed to develop any testimony that would cause this Court to conclude the trial court abused its discretion when it formulated legal conclusions based on the record before it.

Finally, in addition to arguing that the body camera video shows the police interaction did not occur in a "high crime area," Appellant claims that **Barr**, above, "found a neighborhood's 'characteristics' to be irrelevant to a probable cause analysis."  Appellant's Brief at 22.  This claim mischaracterizes the **Barr** holding, wherein the arresting officer "stated on at least two occasions that he conducted a probable cause search of the vehicle in question based upon the smell of marijuana."  **Barr**, 266 A.3d at 44.  In **Barr**, the defendant's presence in a high crime area was irrelevant because "troopers simply stopped a vehicle for a minor traffic violation and then smelled marijuana."  **Id.** at 44; **see also Commonwealth v. Joseph**, 34 A.3d 855, 863-34 (Pa. Super. 2011) ("[A] police officer's observance of a defendant's conduct [in] a 'high crime area' may, along with other factors, contribute to a finding of probable cause.") (citation omitted)).

For the foregoing reasons, Appellant's issue merits no relief.

Judgment of sentence affirmed.

- 15 -

Judge Bowes joins the memorandum.

Judge Kunselman files a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/12/2024